# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WILLIAM EDWARD BARNHILL, JR. ,**

        **Plaintiff,**

**v.**                                        **Case No: 6:20-cv-748-RBD-LRH**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

William Edward Barnhill, Jr. ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits. Claimant raises two arguments challenging the Commissioner's final decision, and, based on those arguments, requests that the matter be reversed for an award of benefits, or alternatively, remanded for further administrative proceedings.   Doc. No. 29, at 19, 32, 39–40.   The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and should be affirmed.   *Id*. at 40.   For the reasons discussed herein, it is **RESPECTFULLY RECOMMENDED** that the Court **AFFIRM** the final decision of the Commissioner.

## I.      PROCEDURAL HISTORY.

On April 10, 2017, Claimant filed an application for disability insurance benefits, alleging that he became disabled on August 1, 2016.   R. 11, 269–70.   His claim was denied initially and on reconsideration, and he requested a hearing before an ALJ.   R. 197–208.   A hearing was held before the ALJ on June 7, 2019, at which Claimant was represented by an attorney.   R. 125–55.

Claimant and a vocational expert ("VE") testified at the hearing.   *Id.*

The ALJ subsequently issued an unfavorable decision finding that Claimant was not disabled.   R. 11–25.   Claimant sought review of the ALJ's decision by the Appeals Council.   R. 266–68.   On February 27, 2020, the Appeals Council denied the request for review.   R. 1–7.   Claimant now seeks review of the final decision of the Commissioner by this Court.   Doc. No. 1.

## II.   THE ALJ'S DECISION.[1]

After considering the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 404.1520(a).   R. 11–25.[2]   The ALJ first found that Claimant met the insured status requirements of the Social Security Act through September 30, 2022.   R. 13.   The ALJ concluded that Claimant had not engaged in substantial gainful activity since the alleged disability onset date of August 1, 2016.   *Id.*[3]   The ALJ then found that Claimant suffered from the following severe impairments:   degenerative disc disease of the cervical spine, fibromyalgia, migraine headaches, and right shoulder degenerative joint disease.   *Id.*[4]   The ALJ concluded that Claimant

---

[1] Upon a review of the record, the undersigned finds that counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum.   Doc. No. 29.   Accordingly, the undersigned adopts those facts included in the body of the Joint Memorandum by reference and only restates them herein as relevant to considering the issues raised by Claimant.

[2] An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy. *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

[3] Although Claimant had earnings in 2017, and certain quarters of 2018, the ALJ concluded that the earnings did not constitute substantial gainful activity.   R. 13.

[4] The ALJ also concluded that Claimant had several impairments that were non-severe, which included:   status post left elbow bursectomy and left olecranon spur removal with bursectomy; dysphasia with reflux symptoms; neurological impairments (including transient ischemic attacks, tremors, and memory loss); bilateral ankle instability; Raynaud's syndrome; bilateral or left shoulder pain; obesity; and depression

did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.   R. 18–19.

After careful consideration of the entire record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in the Social Security regulations,[5] with the following limitations:

> [T]he claimant can occasionally climb stairs.  The claimant should never climb ladders, ropes, or scaffolds.  The claimant can occasionally balance, stoop, kneel, crouch, and crawl.  The claimant can occasionally overhead, forward, and lateral reach with his right upper extremity.  The claimant [sic] avoid concentrated exposure to vibrations and avoid all hazards.

R. 19.

Based on this assessment, the ALJ concluded that Claimant was capable of performing past relevant work as an auto body repair supervisor and retail manager, both of which the ALJ found do not require the performance of work-related activities precluded by Claimant's RFC.   R. 24. Accordingly, the ALJ concluded that Claimant was not under a disability, as defined by the Social Security Act, from August 1, 2016 through the date of the decision.   R. 25.

## III.     STANDARD OF REVIEW.

Because Claimant has exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference

---

and anxiety.   R. 14–18.

[5] The social security regulations define light work to include:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

in 42 U.S.C. § 1383(c)(3).   The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).   The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.   ANALYSIS.

In the joint memorandum, which the undersigned has reviewed, Claimant raises two assignments of error:   (1) the ALJ's determination that Claimant had the RFC to perform light work with additional limitations was not supported by substantial evidence, specifically, the ALJ erred in relying on the opinions of two state agency consultants; and (2) the ALJ erred in his consideration of Claimant's subjective complaints of pain.   Doc. No. 29.   The undersigned will address these contentions in turn.

A.     Claimant's RFC.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).   The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."   *Lewis*, 125 F.3d at 1440.   In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the opinions of medical and non-medical sources.   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

Claimant filed his application for disability insurance benefits on April 10, 2017.   R. 11, 269–70.   Effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.   When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.   The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).   We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 404.1520c(a).   Subparagraph (c) provides that the factors to be considered include: (1) supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of the length of treatment relationship; frequency of examination; purpose of treatment relationship; extent of treatment relationship; and examining relationship); (4) specialization; and (5) other

factors that tend to support or contradict a medical opinion or prior administrative medical finding. *Id.* § 404.1520c(c).

Pursuant to the new regulations, the Commissioner is not required to articulate how he "considered each medical opinion or prior administrative medical finding from one medical source individually."   20 C.F.R. § 404.1520c(b)(1).   Courts have found that "[o]ther than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness."   *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citing *Mudge v. Saul*, No. 4:18CV693CDP, 2019 WL 3412616, *4 (E.D. Mo. July 29, 2019)).   *See also Torres v. Comm'r of Soc. Sec. Admin.,* No. 6:19-cv-1662-Orl-PDB, 2020 WL 5810273, at *5 (M.D. Fla. Sept. 30, 2020) (finding no error where ALJ did not specifically address in the decision any factors other than supportability and consistency).

Here, Claimant's argument appears to rest solely on the ALJ's reliance on the opinions of two state agency consultants, Dr. Joseph Chiaro, and Dr. Edmund Molis.   Doc. No. 29, at 19–26. Drs. Chiaro and Molis both opined that Claimant could perform light work, subject to certain functional limitations.   R. 157–71 (Dr. Chiaro); R. 174–93 (Dr. Molis).

As it relates to Drs. Chiaro and Molis, the ALJ stated as follows in the decision:

> I have considered the prior administrative medical findings of state agency consultants Joseph Chiaro, M.D. and Edmund Molis, M.D.   Dr. Chiaro found that the claimant was capable of performing light exertional work with the additional limitation that the claimant can occasionally reach in front, laterally, or overhead with his right upper extremity (Exhibit 2A).   On reconsideration, Dr. Molis also found the claimant capable of performing light exertional work with a limitation to occasional reaching in front, laterally, and overhead with the right upper extremity (Exhibit SA).   Dr. Molis further indicated that the claimant can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally balance stoop, kneel, crouch, and crawl (Exhibit SA).   Dr. Molis indicated that the claimant should avoid concentrated exposure to vibration and even moderate exposure to hazards (Exhibit 5 A).   The findings of Dr. Chiaro and Dr. Molis are persuasive as

they are consistent with the evidence in the record and well supported.   Dr. Chiaro and Dr. Molis provided detailed summaries as well as analysis of the record in support of their findings.   Moreover, Dr. Chiaro and Dr. Molis's findings are consistent with the evidence in the record, including the primarily benign neurological examinations as well as the claimant's own reports of improvement in his symptoms with treatment (Exhibits 22F pp. 10, 3, 25F p. 1, 26F pp. 32, 65, 9, 24F p. 3, 29F pp. 84, 69, 65, 53, 101, 36F p. 3).   Furthermore, Dr. Chiaro and Dr. Molis are familiar with our program rules, regulations, and evidentiary standards further increasing the persuasiveness of their opinions.   While I note that there was evidence submitted to the record following the determinations of Dr. Chiaro and Dr. Molis, this evidence is generally cumulative in nature showing ongoing monitoring and treatment of the claimant impairments and does not support any significant worsening of the claimant's condition and therefore, the findings of Dr. Chiaro and Dr. Molis remain consistent with the record as a whole.   Although I find both the findings of Dr. Chiaro and Dr. Molis persuasive, I find more persuasive Dr. Molis's findings as he had the opportunity to review more of the objective medical evidence in the record on reconsideration.

I note that there are no opinions in the record suggesting that the claimant has greater limitations than determined herein.   Therefore, after review of the complete record as well as consideration of all opinions within the record, the testimony of the claimant, and the claimant's severe and nonsevere impairments, I find that the claimant retains the residual functional capacity as set forth above.

R. 23–24.

Claimant's argument is two-fold.   First, Claimant contends that Dr. Molis's opinion that Claimant is capable of performing light work is unclear and internally inconsistent because although Dr. Molis opined that Claimant can perform light work, Dr. Molis's report also states "UNABLE TO DO PROJECTED RFC AS OAD IS OVER A YEAR OLD.   HE IS NOW 4 MOS POST-ACDF."   Doc. No. 29, at 3.   Second, Claimant argues that the ALJ erred in finding Dr. Molis's opinions the "most persuasive" not only because of this inconsistency, but also because Dr. Molis's opinion issued February 26, 2018, and there was a significant amount of medical evidence of record after this date.   *Id.*   Claimant contends that the medical evidence of record dated after Dr. Molis's opinion demonstrates that Claimant was treated for significant medical problems, and the evidence demonstrates that he continued to experience severe pain and limitations.   *Id.* at 23–25.   Claimant

also appears to suggest that the ALJ ignored such evidence.  *Id.* at 25.  Therefore, according to Claimant, the ALJ's RFC determination is not supported by substantial evidence.  *Id.* at 25–26.

Upon consideration, the ALJ's decision is supported by substantial evidence and complies with the new regulations, and thus, the undersigned respectfully recommends that the Court reject Claimant's first assignment of error.   As to Claimant's first argument, Claimant contends that the notation in Dr. Molis's report that "UNABLE TO DO PROJECTED RFC AS AOD IS OVER A YEAR OLD. HE IS NOW 4 MOS POST-ACDF" renders Dr. Molis's opinion internally inconsistent because this statement indicates that Claimant "could not perform the previously projected residual functional capacity determination," and Dr. Molis in other parts of his opinion indicates that Claimant can perform light work.  Doc. No. 29, at 23.   The undersigned does not find this argument persuasive.

Specifically, Dr. Chiaro provided a functional capacity assessment at the initial level of Claimant's case, which opinion was filed on July 25, 2017.  *See* R. 157–71.  On October 9, 2017, Claimant underwent an anterior cervical discectomy with decompression of spinal cord and bilateral spinal nerve root and interbody fusion, also referred to as an ACDF.  *See* R. 830–31, 842.  Dr. Molis thereafter provided a functional capacity assessment at the reconsideration level of Claimant's case, and his opinions were filed on February 26, 2018.  *See* R. 174–93.  Thus, it makes sense for Dr. Molis to note the intervening ACDF procedure, and it is reasonable to conclude that Dr. Molis's notation reflects an inability to rely on Dr. Chiaro's functional capacity assessment due to the intervening ACDF procedure.   Notably, the functional capacity assessment by Dr. Molis was more restrictive than that opined to by Dr. Chiaro.   Specifically, although the doctors both opined that Claimant could perform light work subject to certain limitations, Dr. Chiaro indicated that Claimant had no postural limitations.  *See* R. 167.   However, Dr. Molis found that Claimant did have

postural limitations, including that Claimant could only occasionally climb ramps/stairs; never climb ladders/ropes/scaffold; and only occasionally balance, stoop, kneel, crouch, or crawl, based on Claimants "neck/back/knee and ankle pains, ACDF, obesity, DJD, FMS, vertigo."   *See* R. 187–88.   Dr. Chiaro also opined that Claimant had no environmental limitations, while Dr. Molis opined that due to the same listed conditions, including the ACDF, Claimant should avoid concentrated exposure to vibration, and even moderate exposure to hazards, such as machinery and heights. *Compare* R. 168, *with* R. 188.   Thus, the undersigned respectfully recommends that the Court reject Claimant's contention that Dr. Molis's opinion is internally inconsistent for noting that "unable to do projected RFC" because the amended onset date was "over a year old" and Claimant was four months post-ACDF.

Claimant's second argument is equally unpersuasive.   Claimant suggests that the ALJ erred in relying on the opinions of the state agency consultants, in particular on Dr. Molis's opinions, because there was significant medical evidence after the state agency consultants issued their opinions.   What Claimant fails to address, however, is the ALJ's explicit finding that such subsequent evidence "is generally cumulative in nature showing ongoing monitoring and treatment of the claimant impairments and does not support any significant worsening of the claimant's condition."   *See* R. 23–24.   Notably, as the ALJ stated, there were no other, or subsequent, medical opinions of record besides those of the two state agency consultants, opining to any additional functional limitations experienced by Claimant.   *See id.*   And in the joint memorandum, Claimant points to no evidence of record to establish any additional limitations other than those imposed by the ALJ in the RFC, instead generally pointing to medical records regarding a diagnosis of chondrocalcinosis, pain in Claimant's hands, back pain, and headaches.   *See* Doc. No. 29, at 23–25.   Accordingly, Claimant has not established reversible error in this regard.

In sum, it appears what Claimant is asking the Court to do is reweigh the evidence, which is not within the province of this Court. *See Bloodsworth*, 703 F.2d at 1239; *see also Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 882 (11th Cir. 2019) ("To the extent that Borges points to other evidence that would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of this Court's appellate review, which precludes it from re-weighing the evidence or substituting its own judgment for that of the Commissioner.").[6]   And to the extent that Claimant points to portions of the record and medical evidence to argue that the ALJ failed to explicitly discuss such evidence in the decision, the undersigned recommends that the Court reject such contention because "the ALJ [is not required] to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow [the Court] to conclude that the ALJ considered the claimant's medical condition as a whole." *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).   Because the ALJ's decision in this case satisfies that standard, and because the decision is supported by substantial evidence, it is respectfully recommended that the Court reject Claimant's first assignment of error.

B.    Subjective Complaints of Pain.

A claimant may establish disability through his own testimony of pain or other subjective symptoms. *Dyer*, 395 F.3d at 1210.   A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

---

[6] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority.  *See* 11th Cir. R. 36–2.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).   "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561–62.   The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence.   *Id*. at 1562.

If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1).   In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work.   *Id*. § 404.1529(c)(1)–(3).   Factors relevant to the ALJ's consideration regarding a claimant's allegations of pain include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, the claimant receives for pain; (6) measures used for pain relief; and (7) other factors pertaining to functional limitations and restrictions to pain.   *Id*. § 404.1529(c)(3)(i)–(vii).

Here, the ALJ summarized Claimant's testimony from the administrative hearing, and then stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

R. 20.   The ALJ thereafter reviewed Claimant's medical records as it relates to each of Claimant's severe impairments (degenerative disc disease, degenerative joint disease of the right shoulder,

migraine headaches, and fibromyalgia), and provided a detailed explanation as to why those impairments did not warrant greater limitations in Claimant's RFC, despite Claimant's subjective complaints.   R. 21–23.

In the joint memorandum, although Claimant characterizes his argument as an error in the consideration of his subjective complaints of pain, what he argues in substance is that the ALJ mischaracterized the record evidence.   And upon review of the joint memorandum and the ALJ's decision, the undersigned agrees with the Commissioner that simply put, Claimant is asking the Court to reweigh the evidence.

For example, Claimant first argues that the ALJ's statement in the decision that Claimant had normal neurological examinations after surgery and "no point tenderness in [his] spine," R. 21, is factually inaccurate, pointing to several other records that Claimant argues document the opposite conclusion.   Doc. No. 29, at 34–35.    However, upon review, the record cited by the ALJ demonstrates that the ALJ's statement is factually accurate.  *See* R. 945 (Exhibit 26F at page 33: "T-Spine: No point tenderness; L-Spine: No point tenderness; C-Spine: No spinal tenderness and mid trapezius tenderness).[7]

Next, Claimant disputes the ALJ's finding that Claimant's "own reports of improvement in his radicular symptoms following surgery combined with reports that his pain management regime results in his pain being manageable also weigh against a finding of greater limitations," arguing that the ALJ fails to cite any record evidence in support and the record actually demonstrates to the contrary.   Doc. No. 29, at 34–35 (citing R. 21).   However, the ALJ did cite records to support this statement, albeit in a preceding paragraph.   The ALJ stated that following surgery, Claimant

---

[7] To the extent that Claimant argues that the record demonstrates that Claimant had a "fairly rough postoperative course" following surgery, Claimant points to a medical record dated October 24, 2017.  *See* R. 840.   Notably, the record cited by the ALJ post-dates that record by several months.  *See* R. 945.

reported neck pain, but also reported "initial resolution of his headaches as well as the numbness in his hands had resolved." R. 21 (citing Exhibit 24F, at 22). The ALJ also stated that Claimant reported that his medication provided relief for his pain and made his pain manageable. *Id.* (citing Exhibit 26F, at 35). The records cited by the ALJ support those statements.

Claimant further takes issue with the ALJ's statements that Claimant "had been described as appearing in no acute distress" and that "[i]t stands to reason that if the claimant's pain were as he testified that it is that his treating providers would have noted the level of distress during the examinations." Doc. No. 29, at 35 (citing R. 21). Claimant acknowledges that treatment records cited by the ALJ reflect that he was "in no acute distress," but argues that the ALJ fails to mention that Claimant's pain is consistently documented by the treating physicians, and thus, the ALJ is "cherry-picking" evidence. *Id.* However, the record again supports the ALJ's reliance on examiner findings that Claimant was in no acute distress, as Claimant acknowledges. *E.g.*, R. 861, 987, 1000, 1161, 1191.[8]

Finally, Claimant contends that the ALJ mischaracterized the evidence "at times." Doc. No. 29, at 36. Claimant gives just two examples. First, the ALJ stated that Claimant's brain imaging had been benign. *Id.* (citing R. 22). However, Claimant contends that a brain MRI revealed "areas of probable chronic microvascular ischemia within the periventricular white matter bilaterally, with more on the left than the right." *Id.* (citing R. 1022). Claimant fails to point out that the particular record he cites also states: "No acute intracranial abnormality as seen on this

---

[8] In arguing that the ALJ "cherry-picked" findings regarding physician notations that Claimant was in no acute distress, Claimant points to several other records stating that Claimant's "pain is consistently documented by [his] treating physicians." Doc. No. 29, at 35. Upon review of the records cited by Claimant, what Claimant points to are mostly his subjective complaints, documented by his physicians. *See* R. 442, 539, 541, 582, 810, 827, 857, 911, 941, 949, 977, 987, 993, 1003, 1006, 1008, 1012, 1017, 1022, 1029, 1044, 1049, 1059, 1069, 1099. Notably, some of the records Claimant cites actually document subjective statements of improvement after his ACDF procedure. *See* R. 857, 911.

noncontrast study." *See* R. 1022 (April 19, 2019 office visit). *See also* R. 1017 (treatment note discussing results of MRI that states "He did have MRI of the brain performed and we reviewed those images together in the office today. As documented below, there is no evidence of acute infarct or other acute findings. There were a few nonspecific T2 white matter hyperintensities consistent with chronic microvascular ischemic change."). Moreover, Claimant fails to address the records cited by the ALJ that support the ALJ's statement that imaging of Claimant's brain had been benign and neurological examinations normal. *E.g.*, R. 861, 979, 1017, 1030, 1045.

Second, the ALJ stated that after Claimant received Botox injections, he reported improvement. R. 22. Although Claimant acknowledges that he reported improvement, Claimant states that it was "only 25 to 49% improvement, [and] the headaches were not completely gone as implied." Doc. No. 29, at 36 (citing R. 979). The undersigned fails to see how the ALJ "implied" that Claimant's headaches were "completely gone," when the ALJ expressly acknowledged "the waxing and waning nature of the claimant's migraine headaches." *See* R. 22. Notably, the ALJ found Claimant's migraine headaches to be a severe impairment. *See* R. 13, 22.

In sum, great deference is owed to the ALJ's findings of fact. *See Hunter v. Comm'r of Soc. Sec.*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996))). And here, Claimant is impermissibly asking this Court to reweigh the evidence supporting the ALJ's credibility determination, and in turn, the RFC determination. *See Bloodsworth*, 703 F.2d at 1239 (the Court may not reweigh evidence or substitute its judgment for that of the Commissioner and must affirm if the decision is supported by substantial evidence).

Moreover, in reviewing an ALJ's credibility determination, "[t]he question is not . . . whether ALJ could have reasonably credited [Claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."   *Werner v. Comm'r, of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011); *see also Hill v. Comm'r of Soc. Sec.*, No. 2:14-cv-708-FtM-CM, 2016 WL 1253579, at *7 (M.D. Fla. Mar. 31, 2016) ("[I]t is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses." (citing *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015))).   Because the ALJ cited substantial evidence regarding his reasons to discount Claimant's subjective complaints of pain, the undersigned respectfully recommends that the Court reject Claimant's second assignment of error.

## V.     RECOMMENDATION.

Upon consideration of the foregoing, it is **RESPECTFULLY RECOMMENDED** that the Court **AFFIRM** the final decision of the Commissioner.   It is further **RECOMMENDED** that the Court direct the Clerk of Court to issue a judgment consistent with its Order on the Report and Recommendation and, thereafter, to close the file.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on June 1, 2021.

**LESLIE R. HOFFMAN**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:

Presiding District Judge
Counsel of Record